**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| **AUNDRE V. DAVIS,** | § | |
| **Petitioner,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:09-CV-434-A** |
| | § | |
| **RICK THALER, Director,** | § | |
| **Texas Department of Criminal Justice,** | § | |
| **Correctional Institutions Division,** | § | |
| **Respondent.** | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE
AND NOTICE AND ORDER**

This cause of action was referred to the United States Magistrate Judge pursuant to the

provisions of 28 U.S.C. § 636(b), as implemented by an order of the United States District Court for

the Northern District of Texas.  The Findings, Conclusions, and Recommendation of the United

States Magistrate Judge are as follows:

## I.  FINDINGS AND CONCLUSIONS

### A.  NATURE OF THE CASE

This is a petition for writ of habeas corpus by a state prisoner under 28 U.S.C. § 2254.

### B.  PARTIES

Petitioner Aundre V. Davis, TDCJ-ID #1268287, is in custody of the Texas Department of

Criminal Justice, Correctional Institutions Division, in Tennessee Colony, Texas.

Respondent Rick Thaler is the Director of the Texas Department of Criminal Justice,

Correctional Institutions Division.

### C.  FACTUAL AND PROCEDURAL HISTORY

In 2004 Davis was convicted by a jury of aggravated robbery with a deadly weapon in

Tarrant County, Texas, and sentenced to fifty years' imprisonment.   (Clerk's R. at 110)   The

appellate court summarized the evidence at trial as follows:

> Charles Lochridge was at a drive-through ATM [with his three children in the car] when a man approached his car and demanded money.   The man pointed a gun at Lochridge's head.   Lochridge noted the man's face, specifically his "protruding eyes."   Lochridge grabbed the barrel of the gun, pushed it out of the car window, and drove away.
>
> Two days after the robbery, a detective showed Lochridge a photospread. Lochridge did not positively identify Davis as the robber, but he circled Davis's photo as the "most familiar looking person" in the photospread "Because of his eyes." The police were able to match Davis's thumb and palm prints to those found on Lochridge's car.
>
> At a pretrial hearing, Lochridge was unable to positively identify Davis as the robber.   When Lochridge was testifying in front of the jury the next day, however, he positively identified Davis as the robber.
>
> Two days before the attempted robbery of Lochridge, both Brian Hodges and Doug Ketcham were robbed while using ATM machines during two different incidents.   Four days later, each identified Davis from a photographic array as the person who had robbed them.   During the punishment phase of the trial, the State offered evidence of Hodges's and Ketcham's pretrial identifications of Davis as the person who robbed them.   (State Habeas R. at 80)

Davis's conviction was affirmed on appeal, his petition for discretionary review was refused,

and the Supreme Court denied his petition for writ of certiorari.   *Davis v. Texas*, No. 2-04-519-CR,

slip copy (Tex. App.–Fort Worth Mar. 16, 2006); *Davis v. Texas*, PDR No. 577-06; *Davis v. Texas*,

No. 06-9346.   Davis also sought state postconviction habeas relief to no avail.   *Ex parte Davis*,

Application No. WR-71,734-02, at cover.   Davis timely filed this federal petition.

## D. Issues

Generally, Davis raises the following claims:

(1)     The pretrial identification procedures were impermissibly suggestive (grounds one through four);

(2)     He received ineffective assistance of trial and appellate counsel (grounds five, six, ten, and twelve through fifteen;

(3)     The state engaged in prosecutorial misconduct (grounds seven and nine);

(4)     He was punished on the basis of facts other than those alleged in the indictment (ground eight); and

(5)     The trial court was biased against him (ground eleven).  (Petition at 7-8D)

### E.  RULE 5 STATEMENT

Thaler believes that Davis has sufficiently exhausted his state remedies as required by 28 U.S.C. § 2254(b) and that the petition is neither time-barred nor subject to the successive petition bar.  (Resp't Answer at 6)

### F.  DISCUSSION

### *Legal Standard for Granting Habeas Corpus Relief*

Under 28 U.S.C. § 2254(d), a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless he shows that the prior adjudication:  (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court.  28 U.S.C. § 2254(d).  A decision is contrary to clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court of the United States on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.  *See Williams v. Taylor*, 529 U.S. 362, 405-06 (2000); *see also Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000).  A state court decision will be an unreasonable application of clearly established federal law if it correctly identifies the applicable rule but applies it unreasonably to the facts of the case. *Williams*, 529 U.S. at 407-08.

The Act further requires that federal courts give great deference to a state court's factual

3

findings.  *See Hill*, 210 F.3d at 485.  Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct.  The applicant has the burden of rebutting the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1). When the Texas Court of Criminal Appeals denies relief in a state habeas corpus application without written order, typically it is an adjudication on the merits, which is entitled to this presumption.  *See Singleton v. Johnson*, 178 F.3d 381, 384 (5th Cir. 1999); *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997).

### *1. Pretrial Identification*

Davis claims that the state appellate court erred by applying the wrong standard of review and analysis to his challenge to the state's pretrial identification procedures, failing to address the due process ramifications of those procedures, and dismissing, as inadequately briefed, his claim that the state failed to employ the Department of Justice's guidelines for conducting pretrial eyewitness identifications.  (App.'s Brief, Appx. #4)

Davis's trial counsel filed a pretrial motion to suppress the identification of Davis by Lochridge, Hodges and Ketcham on the basis of impermissibly suggestive pretrial procedures.  Law enforcement officers, all three victims, and an expert witness for the defense were called to testify at the suppression hearing.  (RR, vol. 2, at 11-87, 129-215; RR, vol. 3, at 58-170; RR, vol. 10, State's Exhibits 1, 3 & 17)  On February 13, 2003, Lochridge, who was robbed at an ATM on February 11, was presented with a six-picture color photo lineup, including a photo of Davis, who is African American, along with five other photos of different African American males of similar age and build with similar characteristics and appearance.  Lochridge was told that the suspect may or may not be in the photo lineup but was not otherwise given any suggestions or additional

information by the law enforcement officer.  Although he was not absolutely positive, Lochridge selected Davis's photo, indicating that Davis looked like the same person who robbed him.

Hodges, who was robbed in a like fashion at an ATM three days earlier on February 9, was shown a six-picture color photo lineup on February 13 of different African American males of similar age and build with similar characteristics and appearance and told to pick out the person who robbed him.  He was not otherwise given any suggestions or additional information.  (RR, vol. 3, at 5-38)  Hodges recalled being shown two arrays.  He selected Davis's photo in the first array but believed the person in the photo looked heavier in the face than the person who robbed him.  He was shown a second lineup and again picked Davis's photo, indicating the photo was a more accurate representation of the person he remembered robbing him.

Ketcham, who was also robbed in a like fashion at an ATM on February 9, was shown the same six-picture color photo lineup as Hodges on February 13 and immediately selected the photo of Davis as the person who robbed him.  He was not otherwise given any suggestions or additional information, however, after selecting Davis's photo, the officer confirmed that the individual was a suspect in the robbery and that a warrant for his arrest would be obtained.  (RR, vol. 3, at 38-57)

Mary Connell, a forensic psychologist, testified on behalf of the defense concerning guidelines outlined by the Department of Justice for conducting eyewitness identification, which were not followed in Davis's cases, and the factors that influence eyewitness misidentification.  (RR, vol. 3, at 58-170)  At the conclusion of the hearing, the trial court overruled Davis's motion to suppress but concluded the defense expert would be allowed to testify on the issue of eyewitness identification at trial.  (RR, vol. 3, at 177-78)

The Due Process Clause prohibits identification testimony at trial following a pretrial

identification by photograph that derives from impermissibly suggestive procedures, which may lead

in turn to an irreparably mistaken identification. *See Stovall v. Denno,* 388 U.S. 293, 302 (1967).

Pretrial identification procedures are constitutional unless the pretrial identification was so

unnecessarily suggestive and conducive as to give rise to a substantial likelihood of

misidentification. *Peters v. Whitley,* 942 F.2d 937, 939 (5th Cir. 1991); *Herrera v. Collins,* 904 F.2d

944, 946 (5th Cir. 1990).  A two-step process governs the admissibility of identification evidence.

A court must first determine whether the pretrial identification was impermissibly

suggestive; if it was, then, second, a court must determine whether, under the totality of the

circumstances, the suggestiveness led to a substantial likelihood of irreparable misidentification.

*Id.*  In *Neil v. Biggers*, 409 U.S. 188 (1972), the Supreme Court identified several factors to help

determine the likelihood of misidentification: (1) the opportunity of the witness to view the criminal

at the crime scene; (2) the witness's degree of attention; (3) the accuracy of the witness's prior

description of the criminal; (4) the level of certainty demonstrated by the witness at the

confrontation; and (5) the length of time between the crime and the confrontation. *Neil,* 409 U.S.

at 199-200; *Livingston v. Johnson,* 107 F.3d 297, 309 (5th Cir. 1997).

Applying the same two-part test to Davis's claims, the state appellate court found the photo

arrays contained photographs similar enough, notwithstanding certain differences, to provide a

reasonable test for the victims to reliably identify the robber.  This similarity in conjunction with the

fact that law enforcement officers did not indicate that a suspect was included in the photographic

array and/or suggest which suspect to choose, led the state court to conclude that neither the content

of the photo arrays nor the manner in which the pretrial identification procedures were conducted

were suggestive.  As such, the court did not address the factors set forth in *Biggers,* applicable only

to the second prong of the test.  A review of the photographic arrays in this case does not reveal that the pretrial identification procedures employed were unduly suggestive to give rise to a substantial likelihood of misidentification of Davis as the robber.  The state court's determination was neither contrary to federal law or unreasonable under the circumstances.

## 2.  *Ineffective Assistance of Counsel*

A criminal defendant has a constitutional right to the effective assistance of counsel at trial and on a first appeal as of right.  U.S. CONST. amend. VI, XIV; *Evitts v. Lucey*, 469 U.S. 387, 393-95 (1985); *Strickland v. Washington*, 466 U.S. 668, 688 (1984); *Anders v. California*, 386 U.S. 738, 744 (1967).  An ineffective assistance claim is governed by the standards set forth in *Strickland v. Washington*.  *Strickland*, 466 U.S. at 668.  To establish ineffective assistance of counsel a petitioner must show (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that but for counsel's deficient performance the result of the proceeding would have been different.  *Id.* at 688.  A court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance or sound trial strategy.  *Id.* at 668, 688-89.  Judicial scrutiny of counsel's performance must be highly deferential and every effort must be made to eliminate the distorting effects of hindsight.  *Id.* at 689.

Davis claims he received ineffective assistance of trial counsel because counsel (1) failed to call Connell during the guilt/innocence phase when it was his only viable defense, (2) abandoned him during the punishment phase by leading the jury to believe he committed the robbery of Lochridge, (3) failed to file a motion to quash the indictment, (4) failed to call witnesses on his behalf, (5) failed to accept a charge on the lesser included offense of robbery, and (6) failed to seek the assistance of a fingerprint expert.  (Petition at 8A-8D)  Davis claims he received ineffective

7

assistance of appellate counsel because counsel failed to raise various issues on appeal.  (*Id.* at 8D)

The state habeas judge conducted a hearing by affidavit, and based largely on trial counsel's

affidavit, entered findings refuting Davis's allegations, upon which the Texas Court of Criminal

Appeals denied habeas relief.  (State Habeas R. at 49-76)

Davis claims counsel was ineffective by failing to call Connell at both the guilty/innocence

phase of his trial.  Counsel responded that as the trial progressed he decided not to call Connell

because there was testimony that the assailant had braced himself on the hood of Lochridge's car;

Davis's palm print was found on Lochridge's car in the location of where the assailant had braced

himself; and the palm print was in lime dust that had been deposited on Lochridge's car the day of

the robbery.  As a matter of trial tactics, counsel decided it would be better to reserve Connell for

use in attacking the eye witness identifications in the two extraneous robberies, which would be used

to enhance Davis's punishment.  Counsel further stated that he discussed not using Connell's

testimony during the guilt/innocence phase, and Davis agreed.

The state habeas court concluded counsel's decision not to call Connell during the

guilt/innocence phase was the result of proper trial strategy.  Strategic decisions by counsel are

virtually unchallengeable and generally do not provide a basis for habeas corpus relief on the

grounds of ineffective assistance of counsel.  *Knowles v. Mirzayance*, 129 S. Ct. 1411, 1420 (2009);

*Strickland*, 460 U.S. at 689.

Davis claims counsel was ineffective by abandoning him during the punishment phase by

leading the jury to believe Davis committed the robbery of Lochridge.  Counsel responded that,

taken in context, the argument served to suggest that Davis was not the person who committed the

two extraneous robberies and that a lesser punishment would thus be appropriate for Davis.  The

8

state habeas court found the argument was the result of reasonable trial strategy and concluded the argument was proper.  Strategic decisions by counsel are virtually unchallengeable and generally do not provide a basis for habeas corpus relief on the grounds of ineffective assistance of counsel. *Knowles*, 129 S. Ct. at 1420; *Strickland*, 460 U.S. at 689.

Davis claims counsel was ineffective by failing to file a motion to quash the indictment because it did not contain the essential elements of the crime charged in that it did not allege "he took or removed anything."  Counsel responded that Davis's reading of the indictment, which tracked the statute and alleges assault and the use of a deadly weapon during the course of the commission or the attempted commission of theft, was incorrect and that there was no basis for filing a motion to quash.  *See* TEX. PENAL CODE ANN. § 29.03 (Vernon 2003).  The state habeas court found that the indictment properly alleged the elements of aggravated robbery.  Counsel is not required to make frivolous motions.  *See United States v. Gibson*, 55 F.3d 173, 179 (5th Cir. 1995).

Davis claims counsel was ineffective by failing to call any witnesses on his behalf during the guilt/innocence phase.  Counsel responded:

> I have already explained the tactical decision that was involved in choosing not to call Dr. Connell at the guilt state of the trial. . . .  Mr. Davis had also provided the names of two other witnesses, a Christopher Teel and his sister, Shyrmina Gray, Mr. Davis's former girlfriend.  Ms. Gray was Mr. Davis' alibi witness, Mr. Teel was basically a character witness and a witness to corroborate the anticipated testimony of Ms. Gray.  Ms. Gray was subpoenaed and sworn by the court as a witness in the case.  Although told to be in court on Wednesday at 9:00 a.m., she did not appear. I had called the number she left with me and the court and found no one at home, but left a voice mail asking her to appear at that time.  The court had previously made it clear that she was on call when she was sworn as a witness.  I felt that since she was the alibi witness, she was critical to Mr. Davis' case.  I advised him that we should seek a Writ of Attachment to bring her to court.  Mr. Davis was vehemently opposed to this course of action, saying that he feared what she might say if angered by virtue of being attached to testify.  Because of his decision that he did not want her attached, I did not attach her and her evidence was not presented at the guilt stage.  These were the reasons for not producing evidence.  The only other person

9

who could have testified at the guilt stage would have been Mr. Davis, who chose
not to testify. . . . I also did not believe Mr. Davis would have been a good witness
on his own behalf.

Based on this testimony, the state habeas court determined there were no witnesses available

to testify that counsel did not call.

Ineffective assistance claims based upon uncalled witnesses are not favored because the

presentation of witness testimony is essentially strategy and thus within the trial counsel's domain,

and speculations as to what these witnesses would have testified is too uncertain. *Alexander v.*

*McCotter,* 775 F.2d 595, 602 (5th Cir. 1985). Claims of uncalled witnesses should be rejected unless

a petitioner demonstrates that the omitted testimony would have been favorable, and that the witness

would have testified at trial. *Id.* Davis did not submit any affidavits by uncalled witnesses

themselves or offer any evidence that they would have been willing to testify on his behalf in state

court or now. His conclusory allegations that witnesses should have been called on his behalf are

unsupported by the record and insufficient to establish deficient performance or prejudice. *See*

*Harrison v. Quarterman*, 496 F.3d 419, 428 (5th Cir. 2007); *Evans v. Cockrell*, 285 F.3d 370, 377

(5th Cir. 2002).

Davis claims counsel was ineffective by failing to accept a charge on the lesser included

offense of robbery by threat. (RR, vol. 6, at 46) Counsel responded that he did not accept or request

a charge because, based on his understanding of the law, the evidence did not warrant such a charge

and it was his duty of candor to the court to decline the lesser included offense charge. The state

habeas court determined that, as a matter of state law, counsel properly turned down the instruction

because there was no evidence to support it and that counsel's decision was thus the result of

reasonable trial strategy.

Deferring to the state court's interpretation of its own law, Davis was not entitled to a lesser

included offense charge, and counsel was not ineffective for failing to request such an instruction. *See Martinez v. Quarterman,* 270 Fed. Appx. 277, 295 (5th Cir. 2008) (finding that because the petitioner was not entitled to lesser included offense jury instruction, he failed to demonstrate his counsel was ineffective for failing to request such an instruction); *see also, United States v. Wise,* 221 F.3d 140, 147 (5th Cir. 2000) (recognizing that jury instructions, as a whole, should reflect "a correct statement of the law" and clearly instruct jurors "as to the principles of the law applicable to the factual issues confronting them").

Davis claims counsel was ineffective by failing to seek the assistance of a fingerprint expert. Counsel responded–

> In preparation for the trial, I consulted with Mr. Frank Schiller, an expert on fingerprint identification.  He examined the latent print on the car and an inked impression of the defendant's prints and confirmed that it was in fact Mr. Davis' thumb and palm print.  Since he confirmed the identification and the accuracy of the state's fingerprint expert, it would have been foolish for me to add a third expert testifying to the identity of the palm and thumb print on the car as Mr. Davis'.

The state habeas court determined under the circumstances counsel's decision not to call their fingerprint expert was the result of reasonable trial strategy.  Clearly, counsel is not ineffective for failing to call an expert witness whose testimony would have been cumulative and would have served no other purpose than to corroborate the state's evidence.

Davis claims he received ineffective assistance of appellate counsel because counsel failed to raise a sufficiency-of-the-evidence claim and his ineffective assistance claims on appeal. Appellate counsel is not required to raise every conceivable argument urged by his client on appeal, regardless of merit.  *Smith v. Robbins*, 528 U.S. 259, 287-88 (2000).  It is counsel's duty to choose among potential issues, according to his or her judgment as to their merits and the tactical approach taken.  *Jones v. Barnes*, 463 U.S. 745, 749 (1983).

11

The state habeas court determined that based on the evidence elicited at trial, Davis had failed to prove appellate counsel should have raised a sufficiency-of-the-evidence claim on direct appeal. The victim's testimony, combined with the finger and palm print evidence, was sufficient, when viewed in the light most favorable to the prosecution, to establish beyond a reasonable doubt that Davis committed aggravated robbery with a deadly weapon. *See Jackson v. Virginia,* 443 U.S. 307, 319 (1979). Counsel is not required to raise frivolous issues on appeal. *See Clark v. Collins,* 19 F.3d 959, 966 (5th Cir. 1994). Secondly, a state postconviction habeas corpus application, and not direct appeal, is generally the appropriate vehicle for bringing forth ineffective assistance claims. *See Robinson v. State,* 16 S.W.3d 808, 810-11 (Tex. Crim. App. 2000); *Thompson v. Texas,* 9 S.W.3d 808, 813-14 n. 5-6 (Tex. Crim. App. 1999).

Davis presents no compelling argument or evidence to rebut the state courts' application of *Strickland* to his ineffective assistance claims, and there is nothing in the record to suggest that but for counsel's alleged acts or omission, the jury would have acquitted Davis or that he would have prevailed on appeal. Davis has not met his burden of overcoming the strong presumption that his trial and appellate attorneys were competent. Even if he could show deficient performance, he has not demonstrated that but for counsel's acts or omissions the outcome of his trial or appeal would have been different.

### 3. Prosecutorial Misconduct

Davis claims the prosecutor engaged in misconduct by commenting on his failure to testify during voir dire and making improper remarks during closing argument in the punishment phase of his trial. As to the first claim, Davis complains of the following remarks by the prosecutor during voir dire–

I'm going to pose the same question to this section of the panel. Anybody here who, if the defendant fails to testify, which he doesn't have to do, the law cannot compel him to do that, thinks that, you know, he's guilty. *He doesn't want to get up here and defend himself.* If it were me up on the stand, I would be singing to the top of my lungs about my innocence. Is anybody here going to hold it against the defendant if he does not testify? (RR, vol. 4, at 15 (emphasis added))

The state habeas court found that "the State was asking the jury whether they would use it against the defendant if he chose not to testify," and that Davis had presented no evidence to support his claim that the state improperly commented on his failure to testify.

The Fifth Amendment prohibits comment on a defendant's silence. *Griffin v. California*, 380 U.S. 609, 615 (1965). Prosecutors are thus prohibited from commenting directly or indirectly on a defendant's failure to testify in a criminal case. *United States v. Montoya-Ortiz*, 7 F.3d 1171, 1178 (5th Cir. 1993). A prosecutor's statements regarding a defendant's failure to testify made after the introduction of evidence may violate the Fifth Amendment. *See United States v. Johnston,* 127 F.3d 380, 396 (5th Cir. 1997). During voir dire, however, before the introduction of any evidence, the prosecution may attempt to determine if a prospective juror will be prejudiced against a party by the absence of live testimony from the defendant. *See Green v. Johnson*, 160 F.3d 1029, 1038 (5th Cir. 1998) (noting that, while comments regarding defendant's failure to testify made *after* introduction of evidence at trial might violate Fifth Amendment, under Texas state law, prosecutor can inquire during voir dire whether prospective jurors will be prejudiced against State by absence of defendant's live testimony); *Campos v. State*, 589 S.W.2d 424, 426 (Tex. Crim. App. 1979) (stating that because the state's counsel had no way of knowing whether the defendant would testify, it was not necessarily error to comment on the defendant's potential failure to testify during voir dire). This is a valid area of voir dire inquiry under Texas law as a prospective juror should be told what the law is before being excused for bias or prejudice against that law. *See Cuevas v. State,* 742

S.W.2d 331, 343 n.12 (Tex. Crim. App. 1987).   The state court correctly categorized the prosecutor's comments.

Davis claims the state made improper remarks during closing argument in the punishment phase by asking the jury to sentence him to life based on matters not alleged in the charging instrument–*i.e.,* on behalf of the victims, the banks, the citizens of Tarrant County, and the jury's families, because of Davis's affiliation with gangs, to prevent the "Aundre Davises of this world taking over," and to assure Davis would not reoffend.  (RR, vol. 9, at 90-94, 103-07)

In Texas, proper jury argument includes four areas: (1) summation of the evidence presented at trial; (2) reasonable deductions drawn from that evidence; (3) responses to opposing counsel's argument; and (4) pleas for law enforcement.  *Coble v. State*, 871 S.W.2d 192, 204 (Tex. Crim. App. 1993).  It is permissible during the punishment phase for the state to suggest that the defendant may commit the same offense again in the future based on his prior criminal conduct.  *See Rocha v. State*, 16 S.W.3d 1, 21 (Tex. Crim. App. 2000); *Starvaggi v. State*, 593 S.W.2d 323, 328 (Tex. Crim. App. 1979).

The state habeas court determined that the state properly presented and argued extraneous offense evidence during the punishment phase.  Evidence of Davis's criminal history, his gang affiliation, his character, and his failure to comply with conditions of probation in the past, was also admitted and argued by the state.  TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(a)(1) (Vernon 2006). The prosecutor's argument, read in the context of the entire closing argument, was a permissible summation of the evidence, including Davis's criminal history and gang affiliation, plea for law enforcement, and request that the jury impose a severe sentence to prevent Davis from perpetrating the same crime again.  Furthermore, even if the prosecutor's argument was objectionable, Davis fails

14

to show that the argument so infected the penalty phase of the trial with unfairness as to make the resulting sentence a denial of due process. *Barrientes v. Johnson*, 221 F.3d 741, 753 (5th Cir. 2000).

### 4. Improper Punishment

Davis claims he was not found guilty of any gang affiliation but was punished more severely as a result of evidence of his gang affiliation. The state habeas court found this claim was not cognizable on state habeas review but nevertheless addressed the claim on the merits. (State Habeas R. at 69-70) Citing to article 37.07 of the Texas Code of Criminal Procedure, *supra*, the state habeas court concluded the state properly presented and argued extraneous offense evidence during the punishment phase. (State Habeas R. at 70) *See* TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(a). Determining what is "relevant" in regard to punishment under the statute is a question of state evidentiary law. Davis has not demonstrated that the state court's decision is contrary to federal law on the issue or that evidence of his gang affiliation so infected the penalty phase of the trial with unfairness as to make the resulting sentence a denial of due process. *Barrientes*, 221 F.3d at 753.

### 5. Judicial Bias

Davis claims his trial was "judicially bias[ed]" and the trial judge abused his discretion by (a) not disqualifying the prosecutor after she informed the jurors that she was a victim of an aggravated robbery, (b) interrupting the suppression hearing to conduct voir dire, (c) admitting "unqualified testimony" from his juvenile probation officer as to his future role in society, (d) admitting gang related testimony, (e) failing to grant a mistrial after dismissing a juror who had not died or become disabled after the jury had received the charge, (f) overruling his motion for directed verdict when the complainant could not identify him in court or recall when or how his prints got on the victim's car, (g) failing to grant a mistrial when the complainant offered hearsay testimony,

without a curing instruction, that led the jury to believe the complainant's daughter identified him, and (h) overruling his objection to hearsay testimony by Officer Ford.

A judge will violate a defendant's due process rights if he is biased against the defendant or has an interest in the outcome of the case. *Bracy v. Gramley*, 520 U.S. 899, 905 (1997). A likelihood or appearance of bias can disqualify a judge as well. *Taylor v. Hayes,* 418 U.S. 488, 501 (1974). Bias is a difficult claim to sustain in a federal habeas action because the degree or kind of interest sufficient to disqualify a judge cannot be defined with precision. *Buntion v. Quarterman*, 524 F.3d 664, 672 (5th Cir. 2008). Generally, the Supreme Court has recognized two kinds of judicial bias: actual bias and presumptive bias, the latter of which is inapplicable to his case. *See, e.g., Withrow v. Larkin,* 421 U.S. 35, 47 (1975) ("[V]arious situations have been identified in which experience teaches that the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable.").

The state habeas court entered findings refuting Davis's claims and concluded the claims were either not cognizable on state habeas review or meritless. (State Habeas R. at 63-64, 71-73) Davis makes no mention of the state court's findings and makes no effort to rebut the presumption of correctness of the state court's adjudication of the claims. Further, applying the appropriate deference to the state court's factual findings, an independent review of the record does not reveal bias or failure to conduct the trial in an impartial fashion on the part of the trial judge.

*6. Evidentiary Hearing*

Davis requests an evidentiary hearing for purposes of further developing the record in support of his claims.  *See* 28 U.S.C. § 2254(e)(2).  Section 2254(e)(2) provides:

> (e)(2)  If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that–
>
> > (A)  the claim relies on–
> > > (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
> > > (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> > (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

Davis has not met the statutory criteria.  The case can be decided on the record, and the interests of justice do not require a hearing.  Further development of the record is not necessary in order to assess the claims.

## II.  RECOMMENDATION

Davis's petition for writ of habeas corpus should be denied.

## III.  NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of this report and recommendation must file specific written objections within 10 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  The court is extending the deadline within which to file specific written

17

objections to the United States Magistrate Judge's proposed findings, conclusions, and recommendation until February 10, 2010. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

## IV.  ORDER

Under 28 U.S.C. § 636, it is ordered that each party is granted until February 10, 2010, to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions, and recommendation. It is further ordered that if objections are filed and the opposing party chooses to file a response, a response shall be filed within seven (7) days of the filing date of the objections.

It is further ordered that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions, and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED January 19, 2010.

      /s/   Charles Bleil
CHARLES BLEIL
UNITED STATES MAGISTRATE JUDGE

18